UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  BENJAMIN H. YORMAK

_____

STEVEN R. YORMAK,

      Appellant,

v.                                Case No:  2:21-cv-156-JES
                                  Bankr. No:  2:15-bk-04241-FMD

BENJAMIN H. YORMAK,

      Appellee.

_____

## OPINION AND ORDER

This matter comes before the Court on appeal of the Bankruptcy Court's Order (1) Granting Debtor's Motion for Summary Judgment as to Creditor's Unlicensed Practice of Law; (2) Sustaining Debtor's Second Amended Objection to Claim and Disallowing Claim No. 4-2; (3) Denying Creditor's Motion for Summary Judgment Regarding Unlicensed Practice of Law; (4) Denying Debtor's Motion to Bar Creditor's Proposed Expert Witness; and (5) Denying Creditor's Motion to Rescind Protective Orders (Doc. #11-4)[1] and the Order Denying Creditor Steven R. Yormak's Motion for Reconsideration

_____

[1] The Court will hereinafter cite documents filed with the District Court as "Doc.", and documents filed in the Bankruptcy case as "Bankr. Doc."  Copies of the relevant documents were included in the record transmitted by the Bankruptcy Court.  The page numbers refer to the Court's computer-generated number at the upper right corner of the document.

(Doc. #11-525).   Appellant filed an initial Brief (Doc. #13), appellee filed a responsive Brief (Doc. #23), and appellant filed a Reply Brief (Doc. #24).

Appellant Steven R. Yormak is an attorney who at all relevant times has been licensed to practice law in Canada.  Mr. Steven Yormak is also the father of Appellee Benjamin H. Yormak, an attorney licensed to practice in Florida and the debtor in the underlying bankruptcy case. Given the same surnames, the Court refers to these parties by their first names for brevity and clarity.[2]

## I.

The Court summarizes the relevant material undisputed background facts, borrowing liberally from the factual findings of the Bankruptcy Court found at Document #11-4, pp. 7-34:

In 1979, Steven graduated from the University of Western Ontario School of Law in Canada.  In 1981, Steven opened a law firm in Canada and has been licensed to practice law in Ontario,

---

[2] Steven Yormak takes issue with the use of "dad" and "son" in the Bankruptcy Court's Order as "suggestive of clear innuendo" that appellee "was not responsible for his own actions and even incompetent despite being 30 years old at the time with over 7 years of legal training and experience having been licensed in two different States and membership in multiple bars (Florida, MA) as well as experience in private practice and the US Attorney office." (Doc. #13, pp. 37-38.)  The Court finds no such innuendo and finds that the father-son relationship is relevant to the business formation and operations at issue.  Nonetheless, the Court will not follow the practice.

Canada ever since. In 2013, Steven was admitted to practice law in the State of Massachusetts. Steven specializes in litigation, disability, employment, and workers' compensation matters. At no time has Steven been admitted to The Florida Bar or licensed to practice law in Florida.

By at least mid-2007 Steven began actively considering starting a law-related consulting business in Florida. On June 14, 2007, while his son Benjamin was in law school in Florida, Steven sent Benjamin an email asking him to "Research Florida Bar Regulations which I might encounter a difficulty with my consulting firm (Obviously the consulting firm cannot be seen to be doing attorney work-merely advising)". On June 15, 2007, Benjamin responded by email, stating "Let me know what you think, but I suspect you may run into some problems with legal 'consulting' if you are not a member of the Florida bar or if you are not under the supervision of a member of the Florida bar. The state seems to be quite strict with this-it would appear that you, a non-lawyer in the state of Florida, can assist someone with completing blank forms, but cannot dispense legal advice." (Doc. #36-3.) Steven replied:

> As discussed pl. research all case law (Fla.) re: defining what is considered "legal" i.e. prosecutions involving illegal practice of law by non-lawyers and out of state lawyers.
>
> How did Court define "practicing law"?

> Another question is parameter i.e. limits for
> out of state lawyers to render advise-
>
> You may also resource Florida Bar proceedings.
> (Discipline proceedings by Fla. Bar Assn.)

(Doc. #36-4.)

Benjamin graduated from law school in 2009 and was admitted to The Florida Bar in September 2009. Benjamin initially worked in the employment litigation practice of a small law firm in Fort Myers, Florida, but the law firm terminated that practice in 2010. On October 19, 2010, Steven sent Benjamin an email saying,

> I have come up with what may be a brilliant
> idea to address your situation on a number of
> fronts, *as well as mine*. Let's see if we can
> talk tomorrow.

On October 25, 2010, Benjamin sent Steven an email under the subject "BHY Disability Group" which attached an outline titled "BHY/SRY Arrangement". The "BHY/SRY Arrangement" included the following terms:

> (1) "SRY will act as consultant to BHY
> Disability Group;"
>
> (2) "SRY will charge monthly fee of $10,000,
> which may be adjusted in the course of
> business based upon BHY gross receipts;"
>
> (3) "Unofficially, fees received will be
> split" in different percentages between SRY
> and BHY depending on whether pleadings are
> filed in the representation;
>
> (4) "Advertising costs will be split evenly
> between BHY and SRY;"
>
> (5) "SRY will have same physical address as
> BHY;"

(6) "SRY keeps fees generated from SSD [Social Security Disability] cases;" and

(7) "SRY will keep track of his own hours."

Under the heading "Promotion," typed notes listed the Yellow Pages, with "SRY to use corner of BHY ad" and "SRY to advertise in Veteran's Affairs," and "Website – James to provide more info." The "BHY/SRY Arrangement" also included a "BHY TO DO" list.

In late February and early March 2011, Steven and Benjamin communicated by email to coordinate the opening of a law firm. In March 2011, Benjamin formed the Yormak Disability Law Group (the "Law Firm"), with an office in Bonita Springs, Florida. In early March 2011, Steven sent Benjamin drafts of the Law Firm's initial client documents, including a retainer agreement to be signed by clients. The Law Firm created a website, began advertising in the Yellow Pages, and printed business cards. Steven was mentioned prominently on the website and in the Yellow Pages and Steven had Law Firm business cards in his own name.

On or about May 1, 2011, Steven and Benjamin entered an oral consulting agreement. Steven described this oral consulting agreement as covering a wide variety of business matters which make up a law practice, including assisting Benjamin "in every aspect of creating and operating a law practice," for compensation of $600 per hour. (See Case No. 2:14-cv-33, Doc. #10, ¶¶ 12, 18.) The terms of the oral consulting agreement were memorialized at

least in part in the subsequent written consulting agreement described below.

Steven and Benjamin operated under the oral consulting agreement from May 1, 2011, until August 18, 2012, when they executed three separate written agreements:

- The *Consulting Agreement* (the "Main Consulting Agreement") recites that: there existed "a previous ongoing oral agreement" between Benjamin and Steven; Steven had expertise and experience in areas beneficial to Benjamin; Benjamin had retained the expert services of Steven since May 1, 2011; Benjamin confirmed the retention of Steven as consultant since May 1, 2011; the parties recognized that Steven was an independent contractor; and Steven "will continue to provide services and has been compensated and will continue to be compensated at the agreed rate of $20,000 per calendar month payable since May 1, 2011." The Main Consulting Agreement acknowledged that Steven had not actually been paid anything and provided for a "payment plan" whereby Steven "will be paid bi-annually for fees incurred and owed to [Steven] according to Schedule A1 and A2." In the event of termination, the Main Consulting Agreement provided that Steven be paid ". . . on the basis of hours expended . . . (1100 hours to July 1, 2012), at the rate of $600/hour" pursuant to attached schedules instead of the $20,000 per month. Separate payments were due pursuant to Schedule A3, a "consultant payment plan" under which Benjamin agreed to pay Steven an amount based on 67% of the gross fees received by Benjamin from seven named files and "[a]ny other files by mutual agreement and/or any files [Steven] has provided services on."

(Id., pp. 10-21.)  The next two consulting agreements related to specific cases pending at the Law Firm:

- The *Consulting Agreement Re: Funari Class Action* (the "Class Action Agreement") relates to attorney's fees anticipated to be earned by the Law Firm in connection with a CBL Class Action. The Class Action Agreement confirms "a previous ongoing oral agreement" and recites that Benjamin desired to retain the expert services of

Steven, "which [Benjamin] has determined is essential and key to the successful completion of this matter [the CBL Class Action] as a key participant to render advise [sic] in the best interests of the firm and client." Under the Class Action Agreement, Benjamin agreed to pay "70% of fees received in this file to a charitable organization as directed and designated by" Steven, and both parties agreed to execute a partnership agreement when Steven "becomes a member of any State bar in the U.S."

- The *Consulting Agreement Re: Barnes Qui Tam* (the "Qui Tam Agreement") is identical in form and content to the Class Action Agreement, except that it relates to a specific Qui Tam Action.

(Id., pp. 22-25.)   The Bankruptcy Court examined in some detail the services provided by Steven to Law Firm clients both before and after the written consulting agreements.   (Doc. #11-4, pp. 13-29.)   The Bankruptcy Court found that Steven and Benjamin met with at least twenty Law Firm clients and that Steven actively participated in the management of their cases.   (Id. at 13.)   The record fully supports the Bankruptcy Court's factual findings as to these cases, and the Court adopts those factual findings.   (Doc. #11-4, pp. 13-29.)

Steven provided services to the Law Firm pursuant to the written Consulting Agreements for less than four months.   On December 4, 2012, Steven wrote an email to Benjamin stating:

This is to notify you as of today pursuant to our agreement that I no longer Consent to your use of me in any way connected to your firm in Florida, including but not limited to any reference to me on your website, promotional material, or any other matter. I will require you to specifically remove any reference to me

- 7 -

> whatsoever from your website within the next
> 7 days. I am sure you will be pleased to
> comply. To do otherwise appears to make no
> sense professionally for either of us.
>
> I presume if asked by clients or anyone else
> you will advise that I have elected to sever
> professional ties with the firm save and
> except the two ongoing matters being the
> Barnes (Qui Tam) and class action (Funari)
> which we can continue to collaborate on.
>
> I expect to be in receipt of statements and
> payment from you within the time allotted in
> our agreements in January, 2013 in the usual
> manner.

(Doc. #36-108.)  Steven was no longer involved with the Law Firm

after late 2012.  (Doc. #36-11, p. 249.)

In November 2013, Steven was admitted to the Massachusetts

Bar Association, and could thereafter lawfully practice law in the

Commonwealth of Massachusetts.

In December 2013, Steven filed a three-count Complaint

against Benjamin and the Law Firm in Florida's Collier County

Circuit Court.  See Case No. 2013-CA-3394.  Steven alleged that

the Law Firm was a "multi jurisdictional" law practice in Canada

and in Florida, that he and Benjamin were its members, and that

Steven also provided consulting services to Benjamin and the Law

Firm.  Count I alleged a claim for breach of an oral partnership

agreement to conduct a multijurisdictional law practice in which

Steven was to receive (1) 70% of the partnership income after

repayment of expenses and payment of $100,000.00 to Benjamin, and

(2) 70% of the income from the CBL Class Action and the Qui Tam

Action.  Count II alleged a claim for breach of the Main Consulting Agreement, in which Benjamin had agreed to pay Steven $600.00 per hour for 1,100 hours in services performed from May 2011 to July 2012.  Count III alleged a claim for breach of the fiduciary duty Benjamin owed to Steven "as partners in a multijurisdictional practice." Counts IV and V alleged claims for specific performance and quantum meruit. In February 2014, Benjamin removed the case to the District Court for the Middle District of Florida.[3]

On April 24, 2015, Benjamin filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Middle District of Florida.  On May 18, 2015, the District Court granted leave to file a Second Amended Complaint (to remove a cause of action for recovery in quantum meruit) and then stayed the district court case in light of the bankruptcy filing.  (Case No. 2:14-cv-33-JES-CM, Docs. ## 181, 188.)

On May 28, 2015, Steven filed the Second Amended Complaint (the "Second Amended Complaint") in his federal lawsuit against Benjamin and the Law Firm.  (Id., Doc. #190.)  The Second Amended Complaint alleged that Benjamin was the sole managing member of the Law Firm, and that Steven provided a wide array of consulting services to Benjamin and the Law Firm.  Counts I and II of the Second Amended Complaint alleged claims for breach of the written

---

[3] See Case No. 2:14-cv-33-JES-CM, Doc. #1; Doc. #2.

and oral Consulting Agreements, alleging that Benjamin retained Steven to assist him in opening and operating a law practice, that Steven provided consulting services from May 2011 to December 2012, and that Benjamin breached the Consulting Agreements by refusing to pay Steven "the $660,000.00 consulting fee" owed to him under the oral and written agreements. Count III of the Second Amended Complaint alleged a claim for unjust enrichment based on the same underlying facts.

On May 29, 2015, Steven timely filed a proof of claim No. 4-1 in Benjamin's bankruptcy case for "$724,275 + Qui Tam (70%) + Class Action (70%)," attaching a copy of the Second Amended Complaint to support the claim. (Doc. #11-18, p. 1; Doc. #11-21, Ex. 3.)  In July 2015, Steven filed a Notice of Claim for Express Trust/Constructive Trust/Equitable Lien From Fees Arising From Qui Tam and Class Actions (Bankr. Doc. #20) against the funds owed to Benjamin in the Qui Tam Action and the CBL Class Action.  In the Notice, Steven asserted that he and Benjamin had agreed that Steven would be paid 70% of the fees received by Benjamin.

On September 17, 2015, Benjamin filed an Objection to Claim No. 4-1 which did not raise the issue of Steven's unlicensed practice of law as a basis for the objection.  (Bankr. Doc. #36.) Steven filed a motion for summary judgment as to the objections, doc. #11-53, and Benjamin filed a counter motion for summary judgment asserting for the first time that the consulting

agreements were void as a matter of law because they provided for compensation to Steven for the unlicensed practice of law (UPL). (Doc. #11-62.)   In April 2016, the Bankruptcy Court determined that Benjamin's original objection was deemed amended to include the UPL issue.  (Doc. #11-89.)

In May 2016, Steven filed a summary judgment motion on the UPL issue, which was denied by the Bankruptcy Court.  (Doc. #11-106; Doc. #11-170.)  Steven's efforts to appeal this interlocutory order were unsuccessful.  (Doc. #11-219.)

On July 27, 2016, Benjamin filed a Notice of Conversion (Doc. #11-127) of his Chapter 13 bankruptcy case to a case under Chapter 7.  The case was converted on September 1, 2016, and a Chapter 7 trustee was appointed (the "Trustee").  (Doc. #11-137.)

In December 2016, Steven filed Amended Proof of Claim No. 4-2 in the converted case in the amount of "$1,095,275.00 + 70% class action + interest" (the "Amended Claim"). The Amended Claim stated that it is for "services performed," and again attached a copy of the Second Amended Complaint.

In April 2018, Benjamin filed his Second Amended Objection to Claim No. 4-1 Filed by Steven R. Yormak (the "Objection") (Doc. #11-288). In the Objection, Benjamin asserted, inter alia, that the claim "is an attempt to be compensated for the unlicensed practice of law," and that the Consulting Agreements are void as a matter of public policy.

On April 19, 2018, the Bankruptcy Court granted Benjamin's motion to amend (and expand) his UPL defense, and Steven's efforts to appeal this interlocutory order were also unsuccessful.  (Doc. #11-289; Doc. #11-316.)

In January 2020, the Bankruptcy Court set a trial for Benjamin's unlicensed practice of law objection.  After completion of extensive discovery proceedings, Steven requested leave to file a motion for summary judgment on the issue.  Steven advised the Bankruptcy Court that "[a]ll discovery has been completed by both parties" and "there remain no genuine issues for trial all relevant evidence being available following discovery."  (Bankr. Doc. #793.)  The Bankruptcy Court granted Steven's request to file a summary judgment motion, which he filed.

Benjamin then filed a cross-motion for summary judgment asserting that Steven's bankruptcy claim should be disallowed because it arose from Steven's unlicensed practice of law.  Steven responded that the services he performed for the law firm were either permissible under federal law or were permissible support services, such as consulting and mentoring, and that Benjamin remained the supervising lawyer.  The Bankruptcy Court cancelled the trial in light of the pending cross motions for summary judgment. (Bankr. Doc. #824.)

After extensive submissions and briefing, the Bankruptcy Court determined that some of Steven's activities and services

rendered in the CBL Class Action, the Qui Tam Action, and for seventeen Law Firm clients constituted the practice of law.  (Doc. #11-4, p. 19.)   These included Steven holding himself out as an attorney; advocating the merits of cases to other attorneys; analyzing the facts and law of clients' cases and conveying the results to the clients both directly and indirectly through Benjamin; directing law-related activities at the Law Firm, including drafting Law Firm documents, formulating the class action claim in the CBL Class action, directing Benjamin in the management of at least seven cases while not being supervised by Benjamin; and obtaining a level of compensation inconsistent with mere consulting and mentoring services. (Id., pp. 39-46.)   The Bankruptcy Court concluded "that the undisputed facts establish, as a matter of law, that the Consulting Agreements provided for [Steven's] unlicensed practice of law", id. at 3, and that Steven "engaged in the unlicensed practice of law," id. at 47.   The Bankruptcy Court found that "[a]n agreement to provide legal services in Florida by an attorney not licensed to practice in Florida is void ab initio unless the services fall into an established exception."   (Id.)   Finding no exceptions, the Bankruptcy Court found that the Consulting Agreements provided for Steven to perform services that constitute the unlicensed practice of law and were therefore void and unenforceable.   (Id. at 48.) The Bankruptcy Court granted Benjamin's summary judgment motion,

denied Steven's summary judgment motion, and sustained Benjamin's objection to Steven's Proof of Claim.  (Id. at 3, 49.)

In a subsequent Order (Doc. #11-525), the Bankruptcy Court denied Steven's motion for reconsideration.  The Bankruptcy Court noted that its summary judgment Order had "determined that the totality of the evidence clearly established that [Steven's] services constituted the unlicensed practice of law" (doc. #11-525, p. 3) and that the Order had concluded that Steven "ran the show" at the Law Firm and that there was no evidence that Benjamin supervised Steven (id. at 3-4.)  The Bankruptcy Court found that its Summary Judgment Order had already considered whether Steven was entitled to compensation on equitable grounds and had concluded that Steven was not entitled to such compensation.  (Id. at 7.)

This is Steven's appeal of the summary judgment order and the Bankruptcy Court's refusal to reconsider whether he still had a valid claim based upon unjust enrichment. Appellant's request for oral argument is denied because oral argument will not be helpful. For the reasons set forth below, the Court affirms in part, reverses in part, and remands for proceedings consistent with this Opinion and Order.

## II.

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. 28 U.S.C. § 158(a); In re JLJ, Inc., 988 F.2d 1112, 1116 (11th

Cir. 1993).   Sitting as an appellate court, a district court reviews *de novo* the Bankruptcy Court's rulings on cross-motions for summary judgment, "and the facts are viewed in the light most favorable to the non-moving party on each motion." Greater Birmingham Ministries v. Sec'y of State for Ala., 992 F.3d 1299, 1317 (11th Cir. 2021) (quoting Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012) (citations omitted)). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 9014(c). "[T]he appeal from a final judgment draws in question all prior non-final orders and rulings that produced the judgment." Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1301 (11th Cir. 2014). The denial of a motion for reconsideration under Fed. R. Civ. P. 59(e) (and Fed. R. Bankr. P. 9023) is reviewed for abuse of discretion.  Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007); Arbelaez v. Enclave Shores Condo. Ass'n Inc., 835 F. App'x 1007, 1008 (11th Cir. 2021).

### III.

Under article V, section 15 of the Florida Constitution, the Florida Supreme Court has the authority to "regulate the admission of persons to the practice of law and the discipline of persons admitted." Fla. Const. art. V, § 15.  "Included within this constitutional mandate is the authority to define what constitutes

the practice of law", and "the authority to prohibit unlicensed persons from engaging in acts constituting the practice of law." Florida Bar v. TIKD Servs. LLC, 326 So. 3d 1073, 1077 (Fla. 2021). The Florida Supreme Court has not formulated a singular, all-encompassing definition of what constitutes the practice of law, but generally applies the test in State ex rel. Fla. Bar v. Sperry, 140 So. 2d 587, 591 (Fla. 1962), vacated on other grounds by 373 U.S. 379 (1963):

> [I]n determining whether the giving of advice and counsel and the performance of services in legal matters for compensation constitute the practice of law it is safe to follow the rule that if the giving of such advice and performance of such services affect important rights of a person under the law, and if the reasonable protection of the rights and property of those advised and served requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitute the practice of law.

TIKD Services LLC, 326 So. 3d at 1077-78.

The Florida Supreme Court has identified "acts commonly understood to be the practice of law" to include "holding himself out as an attorney in dealings with others; attempting to argue and advocate the merits of cases, the applicability of the law, evidentiary issues, liability issues, discovery matters, and settlement matters with opposing counsel; and attempting to

- 16 -

analyze statutory and case law and to discuss it with clients and opposing counsel." The Florida Bar v. Neiman, 816 So. 2d 587, 594 (Fla. 2002).  Additionally, the preparation of a contract and activity requiring statutory, or case law analysis, constitute the practice of law, The Florida Bar re Advisory Opinion--Activities of Cmty. Ass'n Managers, 177 So. 3d 941 (Fla. 2015), as does advertising services in such a way that leads the public to believe the person is capable of providing legal services, The Fla. Bar v. We The People Forms & Serv. Ctr. of Sarasota, Inc., 883 So. 2d 1280, 1281-82 (Fla. 2004). Disclosures of a non-lawyer status will not necessarily preclude a person from engaging in the practice of law.  TIKD Servs. LLC, 326 So. 3d at 1082 ("disclosure of its nonlawyer status to the public does not permit it to do what its status as a nonlawyer prohibits it from doing.").

On the other hand, there is conduct which cannot be regulated by The Florida Bar as the unlicensed practice of law.  E.g., Sperry v. State of Fla. ex rel. Florida Bar, 373 U.S. 379, 382 (1963) (The Florida Bar cannot enjoin conduct covered by federal license to practice before the Patent Office even though it constitutes practice of law); In re Yormak, 9:15-BK-04241-FMD, 2019 WL 10744973, at *4 (Bankr. M.D. Fla. June 6, 2019) ("Therefore, the Court finds that the activities Steven Yormak rendered in assisting clients in obtaining Social Security disability benefits did not constitute the unauthorized practice of law.").  This exception,

however, does not apply simply because a case has a federal subject matter. See The Florida Bar v. Rapoport, 845 So. 2d 874, 877 (Fla. 2003) (enjoining non-lawyer who "engaged in the traditional tasks of the lawyer—giving of legal advice, preparing and submitting claims, representing clients in proceedings, advertising his ability to represent clients—in securities arbitration proceedings in Florida.")

The Florida Supreme Court has recognized a private civil action to recover fees and damages for the unlicensed practice of law. Goldberg v. Merrill Lynch Credit Corp., 35 So. 3d 905, 907 (Fla. 2010). For such a cause of action, however, the Florida Supreme Court must have already "ruled that the specified conduct at issue constitutes the unauthorized practice of law. . . . Stated another way, a claimant must allege as an essential element of any cause of action premised on the unauthorized practice of law that this Court has ruled the activities are the unauthorized practice of law." Goldberg, 35 So. 3d at 907. If the conduct has been determined by the Florida Supreme Court to constitute the practice of law, a cause of action will exist even though the particular defendant has not been subject to a Florida Bar proceeding. Goldberg, 35 So. 3d at 908. The "specified conduct" previously determined by the Florida Supreme Court to constitute the unauthorized practice of law must be based on specific facts, not generalizations. The Florida Bar re Advisory Opinion-Scharrer

v. Fundamental Admin. Servs., 176 So. 3d 1273, 1278 (Fla. 2015).
The Court finds no reason why this element would not also apply
when the unlicensed practice of law is used as a defense or as an
objection to a bankruptcy claim.

Finally, an attorney not licensed to practice law in Florida,
but who provides legal services in Florida, is not entitled to
collect the quantum meruit value of his fee because "it violates
public policy for a court to award a fee, even in quantum meruit,
for the unlicensed practice of law." Morrison v. West, 30 So. 3d
561, 563 (Fla. 4th DCA 2010). See also Vista Designs, Inc. v.
Silverman, 774 So. 2d 884, 888 (Fla. 4th DCA 2001) ("We reject
Silverman's claim that he be entitled to keep the monies paid to
him under a fee agreement which was declared void *ab initio,* based
on quantum meruit.")

**IV.**

Steven asserts that the course of discovery in the Bankruptcy
Court denied him due process and a fair hearing on the unlicensed
practice of law issue. A *de novo* review of the record establishes
otherwise.

Due process requires the "opportunity to be heard . . . at a
meaningful time and in a meaningful manner." Armstrong v. Manzo,
380 U.S. 545, 552 (1965) (quotation marks omitted). "Due process
requires only that a person have a meaningful opportunity to
present his claims; it does not guarantee success." In re Gaime,

17 F.4th 1349, 1355 (11th Cir. 2021) (quoting Am. Nat'l Bank & Tr. Co. v. City of Chicago, 826 F.2d 1547, 1550 (7th Cir. 1987)).  "A judgment is generally void if the court 'acted in a manner inconsistent with due process of law.'"  In re Le Ctr. on Fourth, LLC, 17 F.4th 1326, 1334 (11th Cir. 2021) (citation omitted).  A bankruptcy court's "exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party."  In re Graddy, 852 F. App'x 509, 513 (11th Cir. 2021) (quoting Comm. Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984) (quoting Hastings v. N.E. Indep. Sch. Dist., 615 F.2d 628, 631 (5th Cir. 1980))).

Steven has not shown any abuse of discretion or resulting prejudice from the discovery rulings, and he received a meaningful opportunity to present his arguments concerning the unlicensed practice of law issue.  Neither Steven's due process rights nor his discovery rights were violated by the Bankruptcy Court's rulings.

The relevant discovery process in the Bankruptcy Court was lengthy.  After review of the record, the Court adopts Appellee's summary of that discovery process as being accurate.  (See Doc. #23, pp. 12-18.)  By July 26, 2019, the Bankruptcy Court had ordered Benjamin to produce every document and communication that related to the unlicensed practice of law issue and allowed Steven to take discovery depositions as to that issue.  (Doc. #11-410,

p. 73.)  A written Order to that effect was filed on August 14, 2019.  (Doc. #11-411.)  Benjamin produced the documents and Steven took three discovery depositions.  The Bankruptcy Court ordered a privilege log and conducted an *in camera* review to resolve various discovery complaints by Steven.  Afterwards, Steven filed the motion for leave to file a motion for summary judgment on the unlicensed practice of law issue, representing to the Bankruptcy Court that "[a]ll discovery has been completed by both parties," and "there remain no genuine issues for trial, all relevant evidence being available following discovery."  (Doc. #11-464.) The Bankruptcy Court granted Steven's request.  Cross-motions for summary judgment were filed with twenty exhibits attached by Steven and 108 exhibits attached by Benjamin.  Steven filed a motion to exclude consideration of some of Benjamin's documents, which the Bankruptcy Court denied.  (Doc. # 11-4, pp. 4-6.)

The Bankruptcy Court held numerous discovery-related hearings and, as specifically related to the unlicensed practice of law issue, granted requests for discovery of all relevant documents and conducted an *in camera* review of documents.  The Court finds no abuse of discretion in any of the UPL discovery-related orders of the Bankruptcy Court or in its decision not to exclude certain documents from summary judgment consideration.  The Court also finds no resulting prejudice to Steven, and no lack of due process. Steven was given notice and fair consideration of the unlicensed

practice of law issue in the type of proceeding he requested –
summary judgment instead of the scheduled trial hearing.   The
Court concludes that the record establishes Steven was not deprived
of due process of law or of his discovery rights.

V.

**A. Steven's Motion for Summary Judgment**

The  Court  next  addresses  Steven's  assertion  that  the
Bankruptcy  Court  erred  in  denying  his  summary  judgment  motion.
Steven  argues  that  "presuming  each  and  every  one  of  the  debtor
allegations  and  exhibits  were  correct  Creditor  was  within  the  law
and  rules  and  did  NOT  commit  UPL."   (Doc.  #13,  p.  39.)   This  is
so,  Steven  argues,  because  his  activities  were  lawful  and
permissible  pursuant  to  federal  exceptions,  *pro hac vice* admission
exceptions,  and  the  dictates  of  The Florida Bar v. Savitt,  363
So.2d  559  (Fla.  1978).   (Id.  at  38-39.)   The  Court  concludes  that
Steven  is  incorrect.

The  Bankruptcy  Court  previously  found  that  Steven's
activities  rendering  assistance  to  clients  in  obtaining  Social
Security  disability  benefits  did  not  constitute  the  unlicensed
practice  of  law  which  could  be  regulated  by  The  Florida  Bar.   In
re Yormak,  9:15-BK-04241-FMD,  2019  WL  10744973,  at  *4  (Bankr.  M.D.
Fla.  June  6,  2019).   The  Bankruptcy  Court  found  that  "Steven
Yormak,  like  any  other  individual,  is  entitled  to  represent  and
advise  clients  as  an  advocate  pursuant  to  federal  legislation

governing Social Security Disability Insurance (SSDI), Veterans Act, etc., as confirmed by Sperry v. State of Florida ex rel. The Florida Bar, 373 U.S. 379 (1963)." Id. Sperry held that Florida could not enjoin a nonlawyer registered to practice before the U.S. Patent Office from preparing and prosecuting patent applications in Florida because a federal statute and Patent Office regulations authorized the practice.  In the absence of such specific federal statutory or regulatory authorization, Florida has the authority to prohibit an attorney not licensed in Florida from practicing law in federal matters in Florida.  See Rapoport, 845 So. 2d at 877.  Here, Steven has identified no other cases in which his involvement would have been protected by the Sperry principles.  None of the specific cases discussed by the Bankruptcy Court's Order fell within the exception recognized in Sperry.

Steven's reliance on *pro hac vice* admission rules is likewise misplaced.  The discretionary authority of a court to allow a non-Florida attorney to appear in a particular court case on a *pro hac vice* basis does not authorize that attorney to maintain a practice of law in Florida.  Steven has not identified any of the Law Firm's cases in which he ever filed a *pro hac vice* motion.  Nothing in the current or former versions of the Rules Regulating The Florida Bar Chapter 4 Rules Of Professional Conduct 4-5 Law Firms and Associations Rule 4-5.5 Unlicensed Practice Of Law; Multi

Jurisdictional Practice Of Law, In re Amendments to Rule Regulating Florida Bar 4-5.5, 47 Fla. L. Weekly S51 (Fla. Feb. 17, 2022), would authorize Steven to practice law in Florida in the circumstances established by even his version of the facts in this case.

Finally, in Savitt, the Florida Supreme Court approved a stipulation which set forth various activities which were, or were not, the practice of law in connection with an interstate law firm with a branch office in Florida. The Florida Bar v. Savitt, 363 So. 2d 559, 560-62 (Fla. 1978). But nothing in Savitt covers all the activities in which Steven participated even when viewed from Steven's perspective. Subsequent Florida Supreme Court cases proscribe the type of conduct in which Steven is alleged to have engaged. See The Florida Bar v. Catarcio, 709 So. 2d 96, 99-100 (Fla. 1998); The Florida Bar v. Miravalle, 761 So. 2d 1049, 1051-52 (Fla. 2000).

Upon a *de novo* review of the record, the Court finds that the Bankruptcy Court was correct in denying Steven's motion for summary judgment. Viewing the evidence in the light most favorable to Benjamin, Steven would not be entitled to judgment as a matter of law. The portion of the Bankruptcy Court's Order denying Steven's motion for summary judgment is affirmed.

**B. Benjamin's Motion for Summary Judgment**

Steven also asserts that for various reasons the Bankruptcy Court erred in granting Benjamin's summary judgment motion, finding that Steven had engaged in the unlicensed practice of law. While the Court rejects most of his arguments, the Court concludes that summary judgment was not appropriate given the many disputed material facts related to the UPL issue.

Steven argues that the Bankruptcy Court erred when it allowed Benjamin to amend his objection to the claim to include the unlicensed practice of law ground. Thus, Steven argues, the UPL objection should not have even been considered, let alone sustained. The Court disagrees.

The claim and objection process is well-established in bankruptcy cases. Under the Bankruptcy Code a "claim" is simply a right to payment. 11 U.S.C. § 101(5)(A).

> Section 501(a) of the Bankruptcy Code provides that a creditor may file a proof of claim. 11 U.S.C. § 501(a). A filed proof of claim is deemed allowed unless a party in interest objects to it. 11 U.S.C. § 502(a). Section 502(b) of the Bankruptcy Code provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... except to the extent" that one of the nine exceptions to allowance under Section 502(b) applies. 11 U.S.C. § 502(b). In the event a proof of claim is filed in accordance with the Bankruptcy Rules, it "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

In re Starr, 10-40001-TOM-13, 2011 WL 482829, at *3 (Bankr. N.D. Ala. Feb. 7, 2011).  "The *prima facie* evidence of a proof claim can be rebutted if the debtor files an objection pursuant to Federal Rule of Bankruptcy Procedure 3007."  In re Bateman, 331 F.3d 821, 827 (11th Cir. 2003).

> If a party in interest objects to a claim that was filed in accordance with the Bankruptcy Rules, then the objection "must 'contain some substantial factual basis to support its allegation of impropriety' "in order to "'overcome the [creditor's] prima facie case.'" In re Baggett Bros. Farms Inc., 315 F. App'x 840, 843 (11th Cir. 2009) (quoting Matter of Mobile Steel Co., 563 F.2d 692, 701 (5th Cir. 1977); Matter of Multiponics, Inc., 622 F.2d 709, 714 (5th Cir. 1980)). "The objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." In re Broadband Wireless Intern. Corp., 295 B.R. 140, 145 (10th Cir. BAP 2003) (citing Abboud v. Abboud, 232 B.R. 793, 796 (Bankr. N.D. Okla. 1999), aff'd, 237 B.R. 777 (10th Cir. BAP 1999)). Should the objecting party satisfy this burden, "the burden then shift[s] back to the creditor 'to prove the validity of the claim by a preponderance of the evidence.'" In re Baggett Bros. Farm Inc., 315 F. App'x at 343 (quoting Collier on Bankruptcy 502.02[3][f] (15th ed. rev. 2007)).

In re Starr, 10-40001-TOM-13, 2011 WL 482829, at *3 (Bankr. N.D. Ala. Feb. 7, 2011).

Generally, if an objection to a claim is made, the Bankruptcy Court "will conduct a hearing to determine" the amount or validity of the claim.  In re Bateman, 331 F.3d at 827.  "An objection to

a claim is a contested matter subject to the procedural requirements of Rule 9014, which requires reasonable notice and an opportunity for a hearing." United States v. Kiester, 182 B.R. 52, 53 (M.D. Fla. 1995).

Nothing precluded the Bankruptcy Court from allowing Benjamin to amend his objection to the claim to include the UPL ground. The amended objection was "served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing," in accordance with Fed. R. Bankr. P. § 3007(a)(1).

Steven also argues that even if the Bankruptcy Court properly allowed the UPL objection to be asserted, it erred in not dismissing or granting summary judgment because the objection was not sufficiently pled under Goldman. The Florida Supreme Court has held that to state a cause of action for UPL a complaint must allege the specific conduct and that the Florida Supreme Court has already determined that that conduct constitutes the practice of law. Goldman, 35 So. 3d at 907. An objection to a bankruptcy claim, however, is not governed by State pleading rules and is not analogous to pleading a cause of action. The general rule is that an objection to a bankruptcy claim does not have to be made in a certain form, but only needs to dispute the debtor's liability. In re Breland, 09-11139, 2014 WL 2712158, at *5 (Bankr. S.D. Ala. June 16, 2014). Benjamin's Amended Objection clearly contained

"some substantial factual basis to support its allegation of [UPL]." Matter of Mobile Steel Co., 563 F.2d 692, 701 (5th Cir. 1977). This is all that was required to be set forth in an objection.

One would think that the summary judgment determination of whether Steven engaged in the practice of law in Florida would be simple and straightforward. After all, Steven's first public filing told a federal court that he was a member and partner in the Law Firm, and that Benjamin owed him the very fees he is now claiming in the bankruptcy proceeding claim. Benjamin, however, has often disputed that Steven was ever a partner in the Law Firm, and his unlicensed practice of law defense was not his initial position. Thus, for summary judgment purposes, Steven's initial admission is not an undisputed fact.

One does not need to be a partner, however, to improperly engage in the practice of law. Given the procedural posture of the case, however, the determination of whether Steven's activities constituted the practice of law is constrained by the restrictive rules which govern summary judgment practice. Some of the Bankruptcy Court's findings strayed from these summary judgment restrictions by weighing credibility and testimony. For instance, the Bankruptcy Court stated that while it may take Steven's expert's opinion into consideration, doc. #11-4, p. 37, it rejected the opinion in part because "it simply is not

plausible," id. at 46.[4]  The Bankruptcy Court also rejected some
of Steven's testimony because it was self-serving. (Id. at 45.)
While a trier of fact could conclude after a trial that Steven
"ran the show" at the Law Firm, as the Bankruptcy Court found,
there was sufficient disputed evidence which made such a finding
impermissible in the context of summary judgment.  Therefore,
these findings cannot be used to support summary judgment.

The Bankruptcy Court twice before denied summary judgment on
the UPL issue, stating that "[t]he Court has no evidence of the
nature of the services contemplated by the Consulting Agreements
or the work performed by Steven Yormak for Debtor's law practice."
In re Yormak, 9:15-BK-04241-FMD, 2019 WL 10744973, at *5 (Bankr.
M.D. Fla. June 6, 2019).  The Bankruptcy Court concluded: "The
Court finds genuine issues of material fact regarding the services
provided by Steven Yormak, the nature of those services, and
whether those services constitute the unlicensed practice of law.
Therefore, the Court does not have a record upon which it can grant
summary judgment."  Id.

---

[4] The Bankruptcy Court also stated that the factual issues
regarding conduct and the legal issue of whether Steven's
activities constituted the unlicensed practice of law were for the
Bankruptcy Court to decide.  (Doc. #11-4, p. 37.)  This is clearly
correct.  While an expert may testify as to his opinion on an
ultimate issue of fact, Fed. R. Evid. 704, an expert may not
"testify to the legal implications of conduct." Montgomery v. Aetna
Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990).

The current summary judgment record contains many more undisputed material facts than in the previous record presented to the Bankruptcy Court. But the record remains replete with disputed material facts, inconsistent statements, morphing positions by the parties, and shifting legal positions during the course of the bankruptcy proceedings. Neither the oral agreement nor the written agreements establish the unlicensed practice of law as a matter of law, and the parties dispute the import of even conduct which appears to be confirmed by contemporaneous documents. Despite the presence of more evidence in the record, "there remain genuine issues of material fact [] regarding the services Steven Yormak provided to Debtor and Debtor's clients, and whether those services constitute the unlicensed practice of law." In re Yormak, 9:15-BK-04241-FMD, 2019 WL 10744973, at *5 (Bankr. M.D. Fla. June 6, 2019). It will take a hearing, not a summary judgment motion, to resolve the Amended Objection and the amount, if any, of the claim. See Scharrer, 176 So. 3d at 1275. Accordingly, the Court reverses the portions of the Order which granted debtor's motion for summary judgment and sustained debtor's Second Amended Objection to the claim.

## VI.

Steven also sought reconsideration, asserting that the Bankruptcy Court failed to consider his claim for compensation under an unjust enrichment theory. The Bankruptcy Court found

that Steven was not entitled to equitable relief because the services he provided clearly constituted the unlicensed practice of law.  In light of the Court's reversal as set forth above, the motion for reconsideration is moot and the Court vacates that Order.

Any additional relief requested by Appellant has been considered but is denied as being unwarranted.

Accordingly, it is hereby

**ORDERED:**

1. The Bankruptcy Court's Order (1) Granting Debtor's Motion for Summary Judgment as to Creditor's Unlicensed Practice of Law; (2) Sustaining Debtor's Second Amended Objection to Claim and Disallowing Claim No. 4-2; (3) Denying Creditor's Motion for Summary Judgment Regarding Unlicensed Practice of Law; (4) Denying Debtor's Motion to Bar Creditor's Proposed Expert Witness; and (5) Denying Creditor's Motion to Rescind Protective Orders, and Order Denying Creditor Steven R. Yormak's Motion for Reconsideration (Doc. #11-4) is:

   (a) **REVERSED** as to the portion Granting Debtor's Motion for Summary Judgment as to Creditor's Unlicensed Practice of Law;

(b) **REVERSED** as to the portion Sustaining Debtor's Second Amended Objection to Claim and Disallowing Claim No. 4-2;

(c) **AFFIRMED** as to the portion Denying Creditor's Motion for Summary Judgment Regarding Unlicensed Practice of Law;

(d) **AFFIRMED** as to the portion Denying Debtor's Motion to Bar Creditor's Proposed Expert Witness;

(e) **AFFIRMED** as to the portion Denying Creditor's Motion to Rescind Protective Orders; and

(f) **VACATED** as to portion Order Denying Creditor Steven R. Yormak's Motion for Reconsideration.

2. The case is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

3. The Clerk shall transmit a copy of this Opinion and Order to the Clerk of the Bankruptcy Court and close the appellate file.

**DONE and ORDERED** at Fort Myers, Florida, this ___13th___ day of April 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
U.S. Bankruptcy Court
Counsel of Record

- 32 -